[Cite as *State v. Matthews*, 2012-Ohio-5174.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97916**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STACEY MATTHEWS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED IN PART; REVERSED IN PART**
**AND REMANDED FOR RESENTENCING**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-549605

**BEFORE:** Jones, P.J., Rocco, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** November 8, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Norman Schroth
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant Stacey Matthews appeals her convictions on six counts of felonious assault, which were rendered after a jury trial. She also appeals her seven-year sentence. We affirm in part, reverse in part, and remand for resentencing.

I. Facts and Procedural History

{¶2} The following trial testimony gave rise to the charges and convictions. Matthews and alleged victim Felicia Nolen both have children fathered by the same man. Prior to the date of the incident, Matthews and Nolen had had "problems" with each other.

{¶3} On April 19, 2011, McDonald's Corporation held a national hiring day for its restaurants. The McDonald's located at East 105th Street and St. Clair Avenue in Cleveland participated in the event and conducted interviews that day at that location. The owner of the McDonald's, victim Turan Strange, hired two security guards to help with the event. Turnout for the interviews was much greater than expected, and the applicants had to line up outside.

{¶4} Nolen and her sister, alleged victim Mariah Gilmore, went to the McDonald's to apply for jobs.[1] The two were waiting outside in the long line when Nolen left to go to her grandmother's house, which was behind the McDonald's, to check on her newborn baby. While at her grandmother's house, a phone call prompted Nolen to go outside, at which time she saw her sister and Matthews. Matthews was in a car and had children with her; she said that she had to drop the children off and then she "would be back."

---

[1] Nolen testified at trial; Gilmore did not.

Nolen got back in line with her sister.

{¶5} Matthews returned about 45 minutes later, this time without the children, but with a front seat passenger, codefendant Cedrica Johnson. Strange, the owner of the McDonald's, and his operational manager, victim Marilyn O'Stricker, saw Matthew's car arrive. The car came onto the parking lot in the opposite direction of what was the customary flow of traffic, and at a fast speed.

{¶6} Matthews parked the car in front of the line of applicants, she and Johnson got out of the car and yelled to Nolen and Gilmore "come on, let's fight, come on." A verbal and physical exchange erupted among Matthews, Johnson, Nolen, and Gilmore. Strange approached Matthews to request that she and Johnson leave, but Matthews ignored his request.

{¶7} Meanwhile, several other people joined the fray in an attempt to assist Strange and diffuse the situation: (1) O'Stricker, the operational manager; (2) Charles Cole, a private security guard; (3) victim Nigel Motley, an applicant at the McDonald's; (4) Julian Gaines, a McDonald's employee; (5) Walter Holmes, a private security guard; and (6) Erica Patton, a McDonald's employee. At one point, Strange and one of the security guards were struggling so hard to restrain Matthews, that all three fell to the ground.

{¶8} Eventually, however, Matthews and Johnson got back in the car. It is clear from the record that by this time, the scene was chaotic, and thus, the testimony from this point gets somewhat muddled. Matthews was in the driver's seat. By one account, Johnson was pulled into the car by Matthews, by another account, Johnson "hopped" into the driver's seat onto Matthews's lap.

{¶9} Matthews drove the car forward a short distance, but was blocked from proceeding by parked cars. She then drove the car in the reverse direction, hitting Strange, O'Stricker, Motley, Gaines, and Holmes. At the time Matthews drove the car in reverse, Nolen was behind the vehicle; she was able to quickly move out of the way and avoid being hit. Witnesses described the car as "barreling back," being driven with a "revved" motor, and "screeching." Witnesses further testified that the incident happened so fast and without any warning, such as a horn, to alert the victims to move out of the way. Matthews then sped off from the scene.

{¶10} By some accounts, at the time Matthews drove the car in reverse, someone was at the driver's side still fighting her. But when showed a video of the melee, those witnesses admitted that they were mistaken.

{¶11} William Tell, the chief of police for the utilities for the city of Cleveland, was coincidentally driving in the area and saw Matthews car speed off the McDonald's parking lot and drive "erratically." The situation looked "suspicious" to Tell so he followed the car and ultimately decided to stop it.[2] Tell testified that when he approached the car, Matthews and Johnson were "hysterical" and "acting crazy." Tell called 911 from his cell phone and while he was waiting for other police assistance, Matthews fled the scene on foot. Johnson identified herself as "Natasha Grayer."

{¶12} Meanwhile, many 911 calls were placed by witnesses who were at the McDonald's. One of the witnesses, Nicole Sims, told the dispatcher that Matthews did

---

[2]Tell was driving an unmarked Ford Escape. Although the car did not have a siren, it had red, white, and blue lights, which he activated to effectuate the stop.

not intentionally hit the victims, but was trying to escape being assaulted.

{¶13} The five victims hit by Matthews's car suffered injuries. Strange was knocked unconscious, sustained head trauma, and was hospitalized for three days. O'Stricker suffered closed head trauma, a fractured knee, and a fractured clavicle. At the time of trial, she had undergone 97 physical therapy sessions.

{¶14} Motley's knee was injured and at the time of trial he was still undergoing physical therapy. Gaines sustained a head injury, fractured wrist, and had scrapes on his knees and elbows. He suffered from headaches for about a month after the incident. And Holmes suffered injuries to his shoulders, neck, and knees. He had to use a walker for a while, and at the time of trial he was using a cane.

{¶15} On this evidence, Matthews was charged with seven counts of felonious assault (Counts 1 through 7) and two counts of assault (Counts 8 and 9). The remaining counts of the indictment, Counts 10 through 13, charged Matthews's codefendant, Cedrica Johnson,[3] with felonious assault and assault.

{¶16} Relative to Matthews, the named victims of the felonious assault were as follows:

· Walter Holmes[4] (Count 1, R.C. 2903.11(A)(2), did knowingly cause or attempt to cause physical harm by means of a deadly weapon, to wit: a motor vehicle);

---

[3]The indictment initially named as codefendant "Natasha Grayer," the name Johnson gave to the police, but was amended prior to trial.

[4]The indictment named "Walter Thomas" as the victim, but was amended during trial to name Holmes instead.

· Turan Strange (Count 2, R.C. 2903.11(A)(2), did knowingly cause or attempt to cause physical harm by means of a deadly weapon, to wit: a motor vehicle; and Count 6, R.C. 2903.11(A)(1), did knowingly cause serious physical harm);

· Julian Gaines (Count 3, R.C. 2903.11(A)(2), did knowingly cause or attempt to cause physical harm by means of a deadly weapon, to wit: a motor vehicle; and Count 7, R.C. 2903.11(A)(1), did knowingly cause serious physical harm);

· Marilyn O'Stricker (Count 4, R.C. 2903.11(A)(2), did knowingly cause or attempt to cause physical harm by means of a deadly weapon, to wit: a motor vehicle); and

· Nigel Motley (Count 5, R.C. 2903.11(A)(2), did knowingly cause or attempt to cause physical harm by means of a deadly weapon, to wit: a motor vehicle).

**{¶17}** The named victims of assault relative to Matthews were: (1) Mariah Gilmore (Count 8); and (2) Felicia Nolen (Count 9). Both assaults were charged under R.C. 2903.13(A), did knowingly cause or attempt to cause physical harm.

**{¶18}** At the conclusion of the state's case, Matthews made a Crim.R. 29 motion for acquittal. The motion was granted as to Count 8, assault against Mariah Gilmore, and Count 9, assault against Felicia Nolen. The motion was denied as to the remaining counts (Counts 1 through 7) against Matthews.

**{¶19}** Matthews requested that the jury be instructed on duress, but the trial court denied the request. The trial court instructed the jury on aggravated vehicular assault, a charge of an inferior degree of felonious assault. The court also instructed the jury on accident, and over Matthews's objection, on flight.

**{¶20}** After its deliberations, the jury found Matthews guilty of Counts 1 through 6,

but not guilty of Count 7, felonious assault of Julian Gaines. At sentencing, the trial court merged Counts 2 and 6 (felonious assault of Turan Strange). The court sentenced Matthews to four years on Count 2 and three years on Count 4, to be served consecutively. The court further sentenced Matthews to two years each on counts 3 and 5, to be served concurrent to each other and the seven-year sentence. Thus, Matthews was sentenced to a total of seven years imprisonment.

**{¶21}** Matthews now presents the following four assignments of error for our review:

> [I.] The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant.

> [II.] Appellant's convictions are against the manifest weight of the evidence.

> [III.] The trial court erred when it refused to instruct the jury on the defense of duress and the failure to do so deprived Appellant of right to a fair trial.

> [IV.] The trial court erred by ordering Appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

## II.  Law and Analysis

### A.  Sufficiency of the Evidence

**{¶22}** For her first assigned error, Matthews contends that the state did not present sufficient evidence to sustain her convictions. We disagree.

**{¶23}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, 8th Dist.

No. 95095, 2011-Ohio-1241, ¶ 18, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

**{¶24}** The role of an appellate court presented with a sufficiency of the evidence argument is delineated as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶25}** Matthews was convicted of felonious assault under R.C. 2903.11(A)(1) and (2), which provide as follows:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶26}** Matthews contends that there was no evidence that she acted "knowingly" in hitting the victims with her car. We disagree.

**{¶27}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶28}** The evidence established that Matthews first went to the McDonald's with

children in her car and told Gilmore, Nolen's sister, with whom Matthews had had "problems," that she would be back. Matthews did come back, and this time, with codefendant Johnson. Matthews drove onto the parking lot at a high rate of speed and in the opposite direction of the ordinary flow of traffic. Both Matthews and Johnson got out of the vehicle, and by all accounts, immediately started fighting with Gilmore and Nolen. All accounts further confirmed that there was a large group of people waiting outside in line.

{¶29} After the situation seemed to be diffusing, Matthews drove her vehicle in reverse at a high rate of speed in the crowded parking lot, hitting her victims. At the time, Nolen was behind the car, and narrowly escaped being hit. Matthews then fled the scene. This evidence was sufficient to show that Matthews acted knowingly.

{¶30} In light of the above, the state presented sufficient evidence to support the felonious assault convictions and the first assignment of error is therefore overruled.[5]

B.   Manifest Weight of the Evidence

{¶31} In her second assignment of error, Matthews contends that the convictions were against the manifest weight of the evidence. We are not persuaded.

{¶32} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." *State v. Thompkins*, 78 Ohio St.3d 380,

---

[5]Although Matthews also contends that the evidence was insufficient to support assault (*see* appellant's brief, p. 17), her Crim.R. 29 motion was granted as to the two assault charges against Gilmore and Nolen, Counts 8 and 9, respectively, and her contention is therefore moot.

387, 1997-Ohio-52, 678 N.E.2d 541. "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." *Id.* at 390 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387. *See also id.* at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact."). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶33} This is not an exceptional case where the evidence weighs heavily against the conviction. Matthews contends that her actions were an accident and that she was merely trying to escape the scene because she "honestly believed that she was in immediate danger of death or great bodily harm."

{¶34} Although we consider credibility in a manifest weight review, issues relating to the credibility of witnesses and the weight to be given are primarily for the trier of fact. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). In *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986), the court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear

witnesses and observe their demeanor: "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact."

**{¶35}** The jury was instructed on accident, but it chose not to believe Matthews's accident defense. Rather, the jury opted to believe the prosecution's version of the facts. We cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.

**{¶36}** In light of the above, the second assignment of error is overruled.

### C. Duress Jury Instruction

**{¶37}** For her third assigned error, Matthews contends that the she was deprived of her right to a fair trial by the trial court's denial of her request for a duress jury instruction.

**{¶38}** It is within a trial court's sound discretion to determine whether the evidence presented at trial is sufficient to require a particular jury instruction. *State v. Mitts*, 81 Ohio St.3d 223, 228, 1998-Ohio-635, 690 N.E.2d 522. An appellate court can only reverse a trial court's refusal to give a defendant's requested instruction upon a showing of abuse of discretion by the trial court. *State v. Midwest Pride IV, Inc.*, 131 Ohio App.3d 1, 15, 721 N.E.2d 458 (12th Dist.1998).

**{¶39}** The affirmative defense of duress is recognized as a legitimate defense to all crimes, with the exception of taking an innocent person's life. *State v. Getsy*, 84 Ohio St.3d 180, 197, 1998-Ohio-533, 702 N.E.2d 866. However, the defense of duress is extremely limited and should only be applied in rare instances. *State v. Cross*, 58 Ohio St.2d 482, 488, 391 N.E.2d 319 (1979).

**{¶40}** In order to successfully raise the defense, a defendant has the "burden of going forward with evidence of a nature and quality sufficient to raise" it. *Getsy* at 198.

> Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of duress. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.

*Id.* at 198-199. Thus, before a trial court will instruct the jury on the defense of duress, it must find as *a matter of law* that evidence presented is sufficient to warrant an instruction on duress. *Cross*, *supra*, at 488. (Emphasis added.)

> One of the essential features of the defense of duress is a sense of immediate, imminent death, or serious bodily injury if the actor does not commit the act as instructed. * * * The force used to compel the actor's conduct must remain constant; controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw.

*Getsy* at 199. (Citations omitted.) "All the conditions must be met," before the instruction is sufficiently warranted. *Cross* at 488. If these conditions are not met, "[t]he court may refuse to give an instruction which is not applicable to the evidence governing the case * * *." *Id.*

**{¶41}** Upon review, we find that the all the conditions required for a duress instruction were not met. The evidence demonstrates that a fight occurred, and Matthews was an instigator and willing participant in it. At the time Matthews was back in her car, the spectators believed the fight was over. After they were shown a video of the incident, the witnesses who initially believed that Matthews was being assaulted as she was driving away admitted that they were mistaken.

**{¶42}** In light of the above, the trial court did not abuse its discretion by denying

Matthews request for a duress instruction and the third assignment of error is therefore overruled.

### D. Consecutive Sentences

**{¶43}** For her final assigned error, Matthews challenges the imposition of consecutive sentences. Specifically, Matthews contends that the trial court failed to make the required findings under R.C. 2929.14.

**{¶44}** The Ohio Supreme Court has identified a two-step process for appellate review of felony sentences. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 14. First we must determine whether a sentence is contrary to law. *Id.* Then, if the sentence was not contrary to law, we review to determine whether the trial court abused its discretion in selecting sentences within the range permitted by statute. *Id.* at ¶ 17.

**{¶45}** With the enactment of Am.Sub.H.B. No. 86, effective September 30, 2011, the General Assembly has revived the requirement that trial courts make findings before imposing consecutive sentences under R.C. 2929.14(C). *State v. Bonner*, 8th Dist. No. 97747, 2012-Ohio-2931, ¶ 5. Under R.C. 2929.14(C)(4), in imposing consecutive sentences, the trial court must first find the sentence is necessary to protect the public from future crime or to punish the offender. Next, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

**{¶46}** Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or

sentencing, while under a sanction imposed pursuant to R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶47} In sentencing Matthews to consecutive terms, the trial court stated the following:

> So I believe that [a] prison sentence is going to be appropriate. * * * Court is going to sentence Miss Matthews to four years on count two, because of the seriousness of this matter, and the kind of injuries sustained with regard to count four. As far as Marilyn O'Stricker, I'm going to sentence to three years, but it's going to be consecutive to count two. So total of seven years.

{¶48} A trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 1999-Ohio-110, 715 N.E.2d 131 (1999).

{¶49} The record here does not demonstrate that the trial court engaged in the

required analysis and made the necessary findings for the imposition of consecutive sentences. The fourth assignment of error is therefore sustained.

**{¶50}** Judgment affirmed in part and reversed in part; case remanded for resentencing.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
MARY EILEEN KILBANE, J., CONCUR