[Cite as *State v. Frost*, 2013-Ohio-2910.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99116

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TERRY FROST

DEFENDANT-APPELLANT

**JUDGMENT:**
SENTENCE AFFIRMED IN PART AND REVERSED IN PART;
REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-527425 and CR-529266

**BEFORE:** McCormack, J., Celebrezze, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** July 3, 2013

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: T. Allan Regas
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Terry Frost ("Frost"), appeals his sentence in the consolidated Cuyahoga C.P. Nos. CR-527425 and CR-529266, in which the trial court sentenced Frost to two 18-month sentences to be served consecutively, in addition to two 10-month sentences to be served concurrently. Finding merit to the appeal, we affirm in part and reverse in part.

**Substantive Facts and Procedural History**

{¶2} On August 19, 2009, Frost was indicted on two counts of kidnapping with sexual motivation specifications, two counts of gross sexual imposition, and one count of attempted rape in Cuyahoga C.P. No. CR-527425. On October 14, 2009, Frost was indicted on two counts of theft in Cuyahoga C.P. No. CR-529266.

{¶3} On March 4, 2010, pursuant to a plea bargain agreement, Frost pleaded guilty in CR-527425 to attempted abduction as amended in Counts 1 and 3 of the indictment and gross sexual imposition in Counts 2 and 4 of the indictment. The state dismissed the remaining Count 5 of attempted rape. In CR-529266, Frost pleaded guilty to two counts of theft.

{¶4} During the plea hearing, the trial court explained the potential sentences to Frost for the offenses to which he pleaded guilty:

> [For] the theft offenses, you could get a prison sentence of 6 months, 7 months all the way to 12 months in Lorain Correctional * * * [on] the attempted abduction and the gross sexual imposition your prison stint is 6 months, 7 months all the way up to 18 months in Lorain Correctional.

The court also explained the supervision of the parole board:

> Post-release control is a part of the sentence. It's mandatory 5 years supervision by the Parole Board because of the gross sexual imposition charges in [Case No. CR-527425], so for the attempted abduction it's an optional post-release control up to 3 years. Same for the theft offenses in the other case.
>
> But for the two GSI's it's a mandatory 5-year supervision by the Parole Board, which means that across these two cases if you were sent to prison on all the charges in both cases, that 5-year mandatory supervision would trump everything else. So that's what you would be left with is mandatory supervision by the Parole Board for a 5-year period.

The court continued to explain to Frost what would happen should he not follow the mandates of the parole board:

> During the Parole Board supervision you have to do what they say. If you don't, they could extend supervision in time, change terms and conditions or return you to prison. * * * Your return to prison time is up to one-half the original sentence. So if you got sent to prison for 6 months then you'd have a five-year supervision, but your return to prison time would be limited to up to one-half of the 6 months.

{¶5} At this time, the trial court advised Frost that community control is a permissible sentence for his crimes, as well as possible fines and restitution to the victims in the theft case. Frost then entered his plea of guilty to the charges as amended in the plea bargain agreement.

{¶6} Following Frost's plea, on April 5, 2010, the trial court ordered a presentence investigation and report and continued the sentencing to May 3, 2010. At the sentencing hearing, the court advised Frost that it reviewed the presentence report. The court also advised Frost that due to the gross sexual imposition, he is a Tier I sex offender and is required to register annually his address with the sheriff's department.

**{¶7}** Prior to sentencing Frost, the trial court reviewed Frost's extensive criminal record for theft, distribution of cocaine, carrying concealed weapons, receiving stolen property, and assault. The court also noted that Frost violated a prior supervised release, he has a substance abuse problem, and he is a high-risk offender according to the Ohio Offender Risk Assessment, stating that "despite your age and your health and your circumstances, you have continued to be arrested and be charged in the criminal justice system with serious offenses." The trial court then addressed the recidivism factors and the seriousness factors:

> When we look at recidivism factors, we look at the long criminal record and the fact that he has violated supervision in the past as being two of several factors we could list which would indicated he's gonna' commit crime in the future. There are no factors indicating he won't.

> His relationship with his victim in the sex offense case facilitated the offense since he was given access to this child by her mother. That, and the fact the victim was only 14 years of age, gives us in that case number two seriousness factors which are pertinent. There's certainly no factors making it less serious.

**{¶8}** Thereafter, the trial court sentenced Frost to community control for three years in each case, along with the requirement that he "report to the Probation Department as they order you to report for these two cases." The court further advised Frost that he must abide by the law and he is prohibited from involving himself in any automobile transaction excepting his own, as "a condition of supervision and staying out of prison." As a further condition of "basic supervision," the court ordered Frost to abstain from alcohol, and it prohibited him from entering the victim's neighborhood. In concluding the hearing, the trial court stated:

If you violate the terms of my supervision in the 527 case number, then your sentence would be six years in the Lorain Correctional Institution, and it would be a concurrent term of two years in the 529266 case number.

You're gonna have to pay supervision fees of $200 and court costs and, of course, the restitution of $250 through the Probation Department * * *.

{¶9} After Frost's initial sentencing, Frost was found to be in violation of his community control on three separate occasions. On March 22, 2011, Frost tested positive for cocaine. The trial court continued his community control, reminding Frost that

any future violation on any one of your terms the court can extend your supervision, * * * change the terms and conditions of your supervision, * * * [or] send you to prison for one year consecutive on each of your two fifth degree felonies in the 529 case number and send you to prison on 18 months concurrent on each of counts 1 and 3 of the 527 case number and a consecutive term of 18 months which would come from giving you two concurrent terms of 18 months on each of counts 2 and 4 of the 527 case number.

The court noted that it is "officially threatening [Frost] with prison * * * for a total of five years."

{¶10} Frost failed to appear at his second community control violation hearing on April 10, 2012, and an arrest warrant was issued. The court later recalled the capias because it learned that Frost had obtained a bed in a drug treatment facility.

{¶11} On October 9, 2012, the court held another violation hearing, due to Frost's testing positive for cocaine and PCP. During the hearing, the trial court expressed its concerns with Frost's attempts at obtaining treatment:

No, you're not trying. We have had an untold number of violations. You're the guy that says you want to stay out of prison. I haven't seen

anything from you that says you're nothing but a drug-addled sex offender. And to stand here and say, Oh, I want to stay here for my children, well, your children are of no concern to me, sir. You got a drug problem and you're a sex offender, you want to stay out of prison, and you've just been horsing this Court around * * *.

You're out there committing suicide with these drugs. I'm supposed to just sit by and let that happen? You get high on cocaine, you molest another child, I'm supposed to sit here and let that happen? I don't think so. You have been under supervision since 2010, it's been two years, and you haven't improved at all.

{¶12} The court then found Frost in violation and sentenced him to 18 months concurrent on Counts 1 and 3, 18 months concurrent on Counts 2 and 4, and both of the concurrent sentences to be served consecutively. In sentencing Frost, the court found as follows:

You're not doing your best. You're not doing your best at all. So I am going to find you in violation and send you to prison today * * *.

Now, the basis to have you serve consecutive sentences is that you represent an extreme danger to the community. You not only have a history of sex offenses on defenseless children, but you also have an untreated, unrespected abiding drug problem in dangerous drugs. You obviously have far more interest in drugs than you do in drug treatment.

So I have looked at 2929.14 and all of your requirements for consecutive sentences are met in this case, given your felonious history and the fact that I have given you all of these attempts to bring your behavior to law abiding and you have not done so.

The court further advised Frost of the imposition of postrelease control:

Let me remind you that in the 527 case number, part of your felony prison sentence is five years mandatory supervision by the parole board. Your

parole board supervision postrelease control in the 529 case number would be up to three years optional, but that's going to merge into the — that's going to merge into the five years mandatory supervision.

During that supervision, you have to do what your supervising parole officer tells you to do. If you do not do what you're told to do, they can extend supervision, change terms, or return you to prison for 90 days. Over the life of supervision, the maximum term of prison time cannot exceed more than one half your original sentence you got from the trial judge.

## Assignments of Error

I. Appellant is entitled to a de novo hearing as the trial court failed to impose a period of postrelease control at the original sentencing hearing or at the previous community control sanction hearing.

II. The trial court erred by ordering Appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

## Postrelease Control

{¶13} Frost contends that the trial court failed to impose a period of postrelease control at Frost's original sentencing hearing or at the previous community control sanction hearing and, therefore, he is entitled to a de novo hearing. We find no merit to Frost's argument and affirm the trial court.

{¶14} Postrelease control is a period of supervision by the adult parole authority that begins after a prisoner is released from prison. *Woods v. Telb*, 89 Ohio St.3d 504, 509, 2000-Ohio-171, 733 N.E.2d 1103; R.C. 2967.01(N). Under R.C. 2967.28(B),

postrelease control is mandatory. The Ohio Supreme Court has held that the trial court must inform the defendant at his sentencing hearing or at the plea hearing that postrelease control is a part of his sentence. *Woods* at 513. In a subsequent case, the Supreme Court determined that the trial court's duty under R.C. 2967.28(B) and (C) is to "notify the offender at the sentencing hearing and to incorporate the postrelease control into its sentencing entry." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 22 (superseded, in part, by R.C. 2929.191, which provides a statutory procedure for correcting notification errors. *See State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶ 23, 24).

{¶15} Therefore, a sentence that does not include the statutorily mandated postrelease control is void and must be set aside. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26. The new sentencing hearing to which the defendant would be entitled, however, is limited to the proper imposition of postrelease control. *Id.* at paragraph one of the syllabus.

{¶16} In this case, the record demonstrates that the trial court informed Frost of the terms and conditions of his postrelease control at his plea hearing as well as his sentencing. As previously noted in this opinion, the trial court advised Frost during the plea hearing that postrelease control was part of his sentence:

> It's mandatory 5 years supervision by the Parole Board because of the gross sexual imposition charges * * *. Same for the theft offenses in the other case.

> But for the two GSI's it's a mandatory 5-year supervision by the Parole Board, which means that across these two cases if you were sent to prison

on all the charges in both cases, that 5-year mandatory supervision would trump everything else.

{¶17} The court further explained to Frost that if he does not do what the parole board advises, the board can return Frost to prison for "up to one half the original sentence."

{¶18} On March 22, 2011, the court found Frost to be in violation of his community control and "threatened" Frost with prison "for a total of five years." In continuing community control at that time, the court reminded Frost that in the event of any future violations, the court can extend supervision, change the terms of his supervision, or send him to prison

for one year consecutive on each of your two fifth degree felonies in the 529 case number and send you to prison on 18 months concurrent on each of counts 1 and 3 of the 527 case number and a consecutive term of 18 months which would come from giving you two concurrent terms of 18 months on each of counts 2 and 4 of the 527 case number.

{¶19} On October 9, 2012, the trial court found Frost in violation again and sentenced Frost to two consecutive 18-month sentences. In so doing, the court again explained the terms and conditions of postrelease control by stating:

Let me remind you that in the 527 case number, part of your felony prison sentence is five years mandatory supervision by the parole board. Your parole board supervision postrelease control in the 529 case number would be up to three years optional, but that's going to merge into the – that's going to merge into the five years mandatory supervision.

During that supervision, you have to do what your supervising parole officer tells you to do. If you do not do what you're told to do, they can extend supervision, change terms, or return you to prison for 90 days. Over the life of supervision, the maximum term of prison time cannot exceed more than one half your original sentence you got from the trial judge.

The court, thereafter, noted the terms of postrelease control in its journal entry of the same date.

**{¶20}** Accordingly, we find that the trial court complied with the statutorily mandated notification requirements regarding postrelease control. Frost's first assignment of error is overruled.

<b>Consecutive Sentence</b>

**{¶21}** Frost contends that the trial court erred by imposing a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and H.B. 86. For the reasons that follow, we agree.

**{¶22}** This court recently addressed the standard of review appellate courts must use in reviewing challenges to the imposition of consecutive sentences. *State v. Venes*, 8th Dist. No. 98682, 2013-Ohio-1891. In *Venes*, we held that the standard of review set forth by the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, is no longer valid in light of the enactment of H.B. 86 and the "revival" of statutory findings necessary for imposing consecutive sentences:

In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the supreme court considered the relevant standard of review in the post-*Foster* era in which the findings necessary to impose consecutive sentences under former R.C. 2929.14(E)(4) had been declared unconstitutional. A plurality of the court held that R.C. 2953.08(G)(2) was inapplicable because it expressly related to "findings" that had been abrogated as unconstitutional. Instead, the plurality set forth the following method of reviewing criminal sentences: (1) is the sentence contrary to law and (2) if not, was it an abuse of discretion. *Id.* at ¶ 14-19.

*Kalish*, as is any plurality opinion, is of "questionable precedential value." *See Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). Nevertheless, panels of this court have found it persuasive, at least insofar as it was applied to sentencing in the post-*Foster* era. *See, e.g., State v. Martinez*, 8th Dist. No. 96222, 2011-Ohio-5832, ¶ 6, fn. 1.

The post-*Foster* era ended with the enactment of H.B. 86 and the revival of statutory findings necessary for imposing consecutive sentences under R.C. 2929.14(C)(4). By reviving the requirement for findings as a predicate for imposing consecutives, the ground offered by *Kalish* for rejecting the standard of review set forth in former R.C. 2953.08 — that it could not stand as a standard of review for a statute that improperly required findings of fact before imposing consecutive sentences — was nullified. With the basis for the decision in *Kalish* no longer valid, and given that *Kalish* had questionable precedential value in any event, we see no viable reasoning for continuing to apply the standard of review used in that case. Henceforth, we review consecutive sentences using the standard of review set forth in R.C. 2953.08.

*Venes* at ¶ 8-10.

{¶23} Therefore, in light of the holding in *Venes*, we apply the standard of review outlined in R.C. 2953.08 to the trial court's imposition of consecutive sentences in this case.

{¶24} R.C. 2953.08(G)(2) provides two grounds for an appellate court to overturn the imposition of consecutive sentences: (1) the sentence is "otherwise contrary to law"; or (2) the appellate court, upon its review, clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4). *Venes* at ¶ 11; R.C. 2953.08(G)(2). Specifically, the statute states as follows:

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under

division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of

section 2929.14, or division (I) of section 2929.20 of the Revised Code,

whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶25} As noted above, H.B. 86, which became effective on September 30, 2011, revived the requirement that trial courts make findings before imposing consecutive sentences under R.C. 2929.14(C). The statute, as revised by H.B. 86, codifies this requirement. *State v. Graves*, 8th Dist. No. 98559, 2013-Ohio-2197, ¶ 11, citing *State v. Bonner*, 8th Dist. No. 97747, 2012-Ohio-2931, ¶ 5.

{¶26} Under current R.C. 2929.14(C)(4), when imposing consecutive sentences, the trial court must first find the sentence is "necessary to protect the public from future crime or to punish the offender." Next, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find that one of the following factors applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C).

{¶27} Compliance with this statute "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *Venes*, 8th Dist. No. 98682, 2013-Ohio-1891, at ¶ 17, citing *State v. Jones*, 93 Ohio St.3d 391, 399, 2001-Ohio-1341, 754 N.E.2d 1252. The failure to make these findings is "contrary to law." *Id.* at ¶ 12.

{¶28} This court previously provided the analysis in which we must engage when reviewing a consecutive sentence in light of the statutory requirement set forth in R.C. 2929.14(C)(4):

A trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings

required by statute. *State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement *when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. See State v. Edmonson*, 86 Ohio St.3d 324, 326, 1999 Ohio 110, 715 N.E.2d 131 (1999).

(Emphasis added.) *State v. Matthews*, 8th Dist. No. 97916, 2012-Ohio-5174, ¶ 48; *see also State v. Doss,* 8th Dist. No. 98229, 2012-Ohio-5751,¶ 20.

**{¶29}** In applying the requirements outlined above to this case, we find that the trial court did not make the statutorily mandated findings before imposing consecutive sentences.

**{¶30}** The record demonstrates that the trial court expressly found that Frost's consecutive sentence is "necessary to protect the public from future crime or to punish the offender," and Frost's criminal history "demonstrates that consecutive sentences are necessary to protect the public from future crime" by Frost, thus satisfying the first and third prongs of R.C. 2929.14(C). As stated previously, the trial court repeatedly admonished Frost for neglecting his substance abuse problem. It expressed concern that Frost was not able or not willing to seek treatment and, as such, the court found he was a danger to himself and "an extreme danger to the community," stating that Frost has a "history of sex offenses on defenseless children, * * * [and] an untreated, unrespected abiding drug problem in dangerous drugs." The court also found that Frost has "far more

interest in drugs than * * * treatment." The court further stated that it reviewed R.C. 2929.14 and found "all of your requirements for consecutive sentences are met, given your felonious history and the fact that I have given you all of these attempts to bring your behavior to law abiding and you have not done so." The trial court determined that Frost was "not doing [his] best at all." The court's discussion of Frost's criminal history can support its findings for both the first and third prongs. *See State v. Shepherd*, 8th Dist. No. 97962, 2012-Ohio-5415, ¶ 82.

**{¶31}** The trial court did not, however, make specific findings with respect to the second prong of the statute. Despite its pronouncement that it reviewed R.C. 2929.14 and found "all of your requirements for consecutive sentences are met," the trial court's reasons for consecutive sentences did not include the finding that the consecutive sentences are not disproportionate to the seriousness of Frost's conduct and to the danger Frost poses to the public. We, therefore, find that the consecutive sentence the trial court imposed is clearly and convincingly contrary to law. Accordingly, we sustain Frost's second assignment of error and remand to the trial court for resentencing consistent with R.C. 2929.14(C).

**{¶32}** This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MARY EILEEN KILBANE, J., CONCUR