[Cite as *State v. Simes*, 2016-Ohio-7300.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103672**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAURA J. SIMES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-595615-A

**BEFORE:** Celebrezze, J., McCormack, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 13, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Sarah E. Gatti
          Noelle A. Powell
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Gregory Paul
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Laura Simes ("appellant"), brings this appeal challenging her conviction for tampering with evidence. Specifically, appellant argues that her conviction is not supported by sufficient evidence, is against the manifest weight of the evidence, and that the trial court erred by failing to provide the jury with a duress instruction. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant matter arose from an altercation involving appellant and her boyfriend, Ronald Towns ("Towns"). The altercation took place on May 4, 2015, at Towns's house in Lakewood, Ohio. Appellant returned to the house around 8:00 p.m. and found Towns with another woman, P.Q. Appellant confronted P.Q. and an altercation ensued. After P.Q. left the house, appellant and Towns continued to argue.

{¶3} The argument between appellant and Towns escalated and became physical. At some point during the physical altercation, Towns suffered a puncture wound to his abdomen. Before first responders arrived at the scene, appellant took the knife with which Towns was stabbed and threw it in the front yard of another house on the street.

{¶4} Appellant initially told the officers that she did not know how Towns was injured. However, appellant eventually informed the officers that Towns's injuries were caused by a knife. Furthermore, appellant directed the officers to the location where she threw the knife.

**{¶5}** In Cuyahoga C.P. No. CR-15-595615-A, the Cuyahoga County Grand Jury returned a four-count indictment charging appellant with (1) felonious assault, in violation of R.C. 2903.11(A)(1); (2) felonious assault, in violation of R.C. 2903.11(A)(2); (3) domestic violence, in violation of R.C. 2919.25(A); and (4) tampering with evidence, in violation of R.C. 2921.12(A)(1). Appellant pled not guilty to the indictment, and the matter proceeded to trial.

**{¶6}** A jury trial commenced on August 24, 2015. Appellant moved for a Crim.R. 29 judgment of acquittal at the close of the state's case. The trial court denied the motion. At the close of trial, the jury found appellant guilty of tampering with evidence, a felony of the third degree. The jury found appellant not guilty of the remaining counts. The trial court ordered a presentence investigation report and set the matter for sentencing.

**{¶7}** On September 28, 2015, the trial court sentenced appellant to community control sanctions for a period of two years under the supervision of the probation department's domestic violence unit.

**{¶8}** Appellant filed the instant appeal assigning three errors for review:

I. [Appellant] did not tamper with evidence and the trial court erred in denying the defense's Rule 29 motion as the evidence was insufficient to find her guilty.

II. [Appellant's] conviction for tampering with evidence was against the manifest weight of the evidence.
III. The trial court erred when it refused to give the jury instructions

regarding the affirmative defense of duress as it related to the tampering

with evidence charge.

## II. Law and Analysis

## A. Sufficiency

{¶9} In her first assignment of error, appellant argues that her conviction for tampering with evidence is not supported by sufficient evidence. Specifically, appellant contends that the state failed to prove that she acted purposely.

{¶10} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶11} In the instant matter, appellant was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1). R.C. 2921.12(A)(1) provides that "no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" In examining R.C. 2921.12(A)(1), the Ohio Supreme Court acknowledged that there are three elements to tampering with evidence:

> (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; [and] (3) the purpose of impairing the potential evidence's availability or value in such proceeding or

investigation.

*State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

{¶12} "Tampering with evidence under R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result." *State v. Sharp*, 8th Dist. Cuyahoga No. 103445, 2016-Ohio-2634, ¶ 19, citing *State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 21 (9th Dist.); R.C. 2901.22(A). When determining whether the defendant acted purposely, a defendant's state of mind may be inferred from the surrounding circumstances. *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786, ¶ 13, citing *Skorvanek* at ¶ 21.

{¶13} Appellant concedes that she "may have moved the knife" and that she "simply took the knife out of the equation at a time of crisis." Appellant's brief at 4. Nevertheless, she argues that because she helped the officers find the knife, the state failed to prove the third element under R.C. 2921.12(A)(1).

{¶14} Lakewood Police Dispatcher, Christine Sykora ("Sykora"), testified that she received a call from appellant "regarding a male that was bleeding from the side." Sykora explained that "[appellant] stated [Towns] had fallen and cut himself on a piece of glass."

{¶15} Lakewood Police Investigator, Todd Allen ("Allen"), testified that he was dispatched to the residence regarding a report that "a male had fallen down and had cut himself." Allen testified that he spoke with appellant to try and determine what transpired at the residence and how Towns became injured. Allen testified that appellant

initially stated that "she didn't know how [Towns] had become injured." Allen explained that appellant's initial story that Towns fell and accidentally cut himself on a piece of glass was neither believable nor consistent with Towns's injuries. Allen testified that approximately a half hour or an hour after she provided the initial story, appellant abandoned the story that Towns cut himself on a piece of glass and gave the following description of the incident:

> She eventually stated that after she had confronted [P.Q.] out front of the apartment building, she went back into the apartment, that she had gotten into an argument with [Towns], at which point he had grabbed her in a choke hold with both [his] hands, breaking her necklace. And right inside the door was a couch, and they had fallen over the couch, and the two of them were wrestling in the living room. And at some point, she states she didn't know where it came from or how she — how she got the knife, but she had a knife, she stabbed him, at which time the fight stopped.

{¶16} Allen testified that appellant stated that after she stabbed Towns, "she walked out the front door, south on Lakewood [Avenue], and thr[ew] the knife in the front yard of a house." Based on appellant's statement, Allen and another officer attempted to locate the knife, but were unable to do so. Thereafter, appellant directed the officers to the location of the knife. Allen explained that the knife "was a couple houses south of where the incident had happened, and it was alongside a fence in some brush." Allen testified that the knife was purposely hidden.

{¶17} Detective Larry Kirkwood of the Lakewood Police Department testified that he interviewed appellant on the day after the incident. During the interview, appellant stated that immediately after Towns was injured, she panicked and "ditched" the knife. Detective Kirkwood explained that appellant stated that she threw the knife in the bushes.

**{¶18}** After reviewing the record, when viewing the evidence in the light most favorable to the state, we find that any rational trier of fact could infer that appellant concealed or removed the knife by taking it outside of the residence and throwing it in the bushes with the purpose of impairing its availability in the investigation. Although appellant eventually informed the officers that she stabbed appellant with the knife and directed the officers to the location of the knife, she initially stated that she did not know how Towns was injured and made no mention of the knife. It was only after the officers determined that appellant's initial account of the incident was inconsistent with their observations and the extent of Towns's injuries that appellant mentioned the knife and led the officers to the location where she threw it.

**{¶19}** Finally, in support of her sufficiency challenge, appellant suggests that she only "moved" the knife because Towns instructed her to do so and threatened to harm her if she did not comply. Appellant's argument, however, is misplaced because it implicates the affirmative defense of duress.

**{¶20}** The Ohio Supreme Court has recognized that a sufficiency challenge does not implicate affirmative defenses. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 37. In *State v. Davis*, 8th Dist. Cuyahoga No. 100526, 2014-Ohio-2769, this court explained that "proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Id*. at ¶ 19, citing *Hancock* at *id*. Therefore, we address appellant's arguments regarding duress only in our analysis of the

manifest weight of the evidence.

**{¶21}** Based on the foregoing analysis, we find that appellant's conviction for tampering with evidence is supported by sufficient evidence. Accordingly, appellant's first assignment of error is overruled.

### B. Manifest Weight

**{¶22}** In her second assignment of error, appellant argues that her conviction for tampering with evidence is against the manifest weight of the evidence.

**{¶23}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶24}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe

their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.   The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶25} In the instant matter, appellant argues that the state's evidence weighs strongly against her conviction.   Specifically, appellant emphasizes that (1) the knife was only removed from the scene for 30 minutes to one hour, (2) she neither washed, destroyed, nor made the knife inaccessible, (3) she only "moved" the knife because Towns insisted that she do so, and (4) she told the officers about the knife and helped them locate it.

{¶26} Towns testified at trial that appellant discarded the knife before the police were called.   Towns testified that he told appellant to get rid of the knife before the police arrived at the scene.   Towns explained that he neither wanted the knife nor "trouble" in his house.   Towns acknowledged that he told appellant that he would harm her if she did not get rid of the knife.   Furthermore, Towns testified that he has physically abused appellant in the past.

{¶27} After reviewing the record, we cannot say that appellant's conviction is against the manifest weight of the evidence.   The jury heard the evidence presented and was in the best position to take into account inconsistencies in the testimony and to assess

the credibility of the witnesses. Furthermore, the jury had sufficient information to judge each witness's credibility and "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

**{¶28}** The jury had sufficient information to judge Towns's and appellant's credibility. The jury heard that Towns did not cooperate with the investigating officers. Towns provided at least three different accounts of the incident. First, Towns insisted that he was accidentally injured. Towns told Detective Kirkwood that he sustained his injuries from falling. Second, in a written statement to appellant's trial counsel, Towns alleged that P.Q. and appellant got into an altercation, P.Q. — rather than appellant — had a knife, and he was "stuck accidentally" when he intervened in the altercation. In the same written statement, Towns stated that P.Q. left the knife in the living room and ran out the door. Third, after Detective Kirkwood informed Towns that appellant admitted that she stabbed him with a knife, Towns "immediately said it was an accident." Towns testified that he is still in a "dating relationship" with appellant and that he would "do anything to protect [her.]" Finally, Towns acknowledged that he had appellant tell "a few different stories" regarding the incident. Towns explained that he instructed appellant to tell the 911 dispatcher that he fell.

**{¶29}** The jury heard that appellant provided at least three different accounts of the incident to the investigating officers. The jury was permitted to weigh appellant's statements to the officers following the incident against Towns's statements at the time of

the incident and his trial testimony. The state presented evidence from which the jury could have reasonably concluded that appellant hid the knife and lied to the police about Towns's injuries to avoid facing criminal charges for her involvement in the incident. Furthermore, the state presented evidence from which the jury could have reasonably concluded that appellant only changed her story, informed the officers about the knife, and helped the officers locate the knife after the officers determined that her initial story was not consistent with their observations at the scene of the incident and the extent of Towns's injuries.

{¶30} Based on the foregoing analysis, we cannot say that this is the exceptional case where the evidence weighs heavily against the conviction or that the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, appellant's second assignment of error is overruled.

## C. Duress Jury Instruction

{¶31} In her third assignment of error, appellant argues that the trial court erred by failing to provide the jury with an instruction on the affirmative defense of duress.

{¶32} During appellant's trial, defense counsel requested that the trial court provide an instruction on the affirmative defense of duress to the jury. After entertaining the parties' arguments regarding the duress instruction, the trial court rejected defense counsel's request.

{¶33} This court reviews a trial court's decision on jury instructions for an abuse of discretion. *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 33.

An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). A trial court is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction. *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. Jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

**{¶34}** The affirmative defense of duress is recognized as a legitimate defense to all crimes, with the exception of taking an innocent person's life. *State v. Getsy*, 84 Ohio St.3d 180, 197, 702 N.E.2d 866 (1998). However, the defense of duress is extremely limited and should only be applied in rare instances. *State v. Cross*, 58 Ohio St.2d 482, 488, 391 N.E.2d 319 (1979).

**{¶35}** In order to successfully raise the defense, a defendant has the "burden of going forward with evidence of a nature and quality sufficient to raise" it. *Getsy* at 198. "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of duress. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.* at 198-199. In *State v. Matthews*, 8th Dist. Cuyahoga No. 97916, 2012-Ohio-5174, this court explained that "before a trial court will instruct the jury on the defense of duress, it must find as *a matter of law* that evidence presented is

sufficient to warrant an instruction on duress." (Emphasis sic.) *Id*. at ¶ 40, citing *Cross* at 488.

> One of the essential features of the defense of duress is a sense of *immediate, imminent death, or serious bodily injury* if the actor does not commit the act as instructed. *See Cross* [at] 487. The force used to compel the actor's conduct must remain constant; controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw. *See State v. Good*, 110 Ohio App. 415, 165 N.E.2d 28 [(10th Dist.1960)].

(Emphasis added.) *Getsy* at 199. "All the conditions must be met," before the instruction is sufficiently warranted. *Cross* at 488. If these conditions are not met, "[t]he court may refuse to give an instruction which is not applicable to the evidence governing the case[.]" *Id*.

{¶36} In the instant matter, the trial court concluded that the evidence presented at trial did not warrant a jury instruction on duress:

> I do believe that the law — that the evidence that's going to be presented — or that was presented is insufficient to warrant an instruction on duress.
>
> So one of the essential features of the defense of duress is a sense of immediate, imminent death or serious bodily injury if the actor does not commit the act as instructed.
>
> The force used to compel the actor's conduct must remain constant, and I emphasize that, controlling the will of the unwilling actor during the entire time he commits or she commits the act and must be of such a nature that the actor cannot safely withdraw.
>
> * * *
>
> All of the conditions must be met before the instruction is sufficiently warranted. If these — if these conditions are not met, the Court may refuse to give the instruction, which is not applicable to the evidence governing this case.

I reviewed not only the case law, I started looking at my notes on this matter, and I go right to the 9-1-1 tape where I hear [appellant] on the call to the 9-1-1 operator screaming, yelling: [Towns is] dying, he's dying, he's dying, he's in pain, he's on Coumadin, get help, he's dying. I hear [Towns] screaming in the background his pain and anguish, and I couple that with the fact of the immediacy or the constant threat and it looks like — and it sounds like that — I mean, there was time for [appellant] to safely withdraw from the scene if she was in fear that he would beat her ass if she doesn't get rid of the knife.

So based upon a review of the evidence and the review of the case law, I'm not going to instruct on the defense of duress.

(Tr. 676-678.)

{¶37} Appellant argues that the trial court should have provided a duress instruction to the jury because (1) Towns had a history of physically abusing appellant, (2) Towns had been physically violent with appellant during the altercation that resulted in him being stabbed, and (3) Towns threatened physical violence when he ordered appellant to remove the knife from the residence.

{¶38} After reviewing the record, we find no evidence of an immediate and continuous threat of harm. Appellant concedes that Towns "was injured at the time he issued the threat[.]" Appellant's brief at 7. When appellant called 911, she advised the dispatcher that Towns was "bleeding to death." When Jeffrey Robinson ("Robinson"), an investigator with the Lakewood Police Department, arrived on the scene, appellant told him that Towns "was inside and he was bleeding to death." Robinson testified that Towns was "bleeding all over the place" and that he was "obviously in a lot of pain." Paramedic Jeremy King testified that upon arriving at the scene, he observed "copious

amounts of blood on the floor" and estimated that Towns lost approximately one liter of blood.

**{¶39}** Given these circumstances, the condition in which the first responders found Towns at the scene, and the extent of Towns's injuries, we find no evidence of an immediate and continuous threat of harm. Appellant neither alerted the first responders, the 911 dispatcher, nor her brother-in-law that Towns had threatened her or that she was actually in fear of harm. By appellant's own admission, she was in possession of the knife with which Towns was stabbed, and there was no testimony indicating that Towns had a weapon. Appellant had an opportunity to escape when she took the knife out of the house and threw it down the street. However, instead of leaving, appellant threw the knife down the street, returned to the house, and proceeded to lie to the first responders about what had transpired.

**{¶40}** Finally, we find no merit to appellant's argument that she was under duress when she removed the knife from the house because Towns's "force" over her is "constant" and she knew that Towns would "make good on his threats[.]" Fear of future harm is not sufficient to prove the affirmative defense of duress. *State v. Zhang*, 6th Dist. Wood No. WD-15-018, 2016-Ohio-975, ¶ 17, citing *Good*, 110 Ohio App. at 419, 165 N.E.2d 28. Appellant's fear that Towns would "make good" on his threat at some undetermined time in the future is insufficient to support a duress instruction.

**{¶41}** Based on the foregoing analysis, we find that all of the aforementioned conditions required for a duress instruction were not met. Accordingly, the trial court

did not abuse its discretion by denying appellant's request for a duress instruction. Appellant's third assignment of error is overruled.

### III. Conclusion

{¶42} Appellant's conviction for tampering with evidence is supported by sufficient evidence and is not against the manifest weight of the evidence. The trial court did not abuse its discretion by denying appellant's request for a jury instruction on the affirmative defense of duress.

{¶43} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

TIM McCORMACK, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR