[Cite as *State v. Jones*, 2013-Ohio-489.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98371

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DARRICK L. JONES

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART; REVERSED IN PART;
## AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-555501, CR-555628, and CR-556053

**BEFORE:**    McCormack, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   February 14, 2013

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Denise J. Salerno
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Darrick Jones ("Jones"), appeals from his guilty plea and criminal sentencing in three separate cases. He contends his sentence is contrary to law and his plea had not been knowing, intelligent, and voluntary. For the following reasons, we affirm his guilty plea, reverse his sentence, and remand for resentencing.

### Substantive Facts and Procedural History

**{¶2}** Jones and his codefendants burglarized several homes in the city of Lakewood over a two-month period between August 10, 2011 and October 13, 2011. He was indicted for various offenses in three separate cases, which were combined for plea proceedings and sentencing. Jones pleaded guilty to certain offenses, and the state dismissed the remaining charges. On April 18, 2012, the court held a sentencing hearing and sentenced him to a total of 32 years of imprisonment.

### Cuyahoga C.P. No. CR-555501

**{¶3}** In Cuyahoga C.P. No. CR-555501, Jones and two codefendants were indicted for (1) two counts of aggravated burglary, (2) two counts of theft, (3) kidnapping, (4) attempted rape — all accompanied with firearm specifications, and (5) possession of criminal tools. These indictments stemmed from their breaking into two homes in Lakewood on October 12, 2011 and October 13, 2011.

**{¶4}** Jones pleaded guilty to two counts of aggravated burglary, one containing a three-year firearm specification, and abduction with a three-year gun specification. The state dismissed the remaining charges.

### Cuyahoga C.P. No. CR-556053

**{¶5}** In Cuyahoga C.P. No. CR-556053, Jones and a codefendant was indicted for (1) kidnapping, (2) two counts of aggravated robbery, (3) felonious assault, (4) discharge of firearm on or near prohibited premises — all accompanied with firearm specifications, and (5) having weapons while under disability. These indictments stemmed from his robbing Eduardo Torres with a gun on West 38th Street in Cleveland on August 10,

2011. Jones pleaded guilty to aggravated robbery with a three-year firearm specification, and the state dismissed the remaining charges.

## Cuyahoga C.P. No. CR-555628

{¶6} In Cuyahoga C.P. No. CR-555628, Jones was indicted for (1) two counts of felonious assault, (2) discharge of a firearm on or near prohibited premises — both accompanied with firearm specifications, and (3) carrying a concealed weapon. The charges stemmed from his shooting an acquaintance, Willie Hodge, on W. 25th Street in Cleveland, on August 27, 2011. Jones pleaded guilty to one count of felonious assault with a three-year firearm specification, and the state dismissed the remaining charges.

{¶7} At the sentencing hearing, the victims addressed the court. The first victim in Cuyahoga C.P. No. CR-555501, Louise Barrett, described the terror she endured:

> I have lived on my street for 20 years. I had never felt afraid or unsafe until that night of October 13th, on a warm fall night when I should have been able to keep a window open[.] [M]y life and the life of my family was changed forever.
>
> This man and his two companions broke into my home and mentally and physically terrorized me. They tied me up, held a gun to my head and burglarized my home. The most horrific fear was that they would harm my daughter. Believing that those minutes may be the last of my life, I began to pray out loud.
>
> He had no regard for my life or my family's. I believe society should be fearful of him. He is very, very versed in the criminal act of physical and verbal terror and, if given a chance, will harm someone else. Please give him the maximum sentence so nobody has to endure what my daughter and I have.

{¶8} Barrett's 16-year-old daughter wrote a letter to the court. It stated:

* * * These men came into our house with the purpose to take our possession from us. But they were also prepared with guns to take on anyone who came into their way. * * *

They terrorized [my mom] verbally and physically and also left a scar that will never go away. They also left a scar with me, as well. Although I was asleep, I was left with constant guilt and remorse for not being able to help my mom. * * *.

{¶9} John Wagner, the second victim in Cuyahoga C.P. No. CR-555501, talked about the devastating impact of the burglary on his family. His elderly mother was traumatized by receiving a telephone call in the middle of night informing her that her son's house had been broken into.

{¶10} Eduardo Torres, the victim in Cuyahoga C.P. No. CR-555603, stated the following:

* * * This neighborhood was okay until this guy came around and pointed a gun at me, shot at me, with the other guys, trying to beat me up so badly.

I was bruised all over and everything is different. * * * I can't even eat, [and] I can't even sleep. I lost a lot of weight.* * *

The neighborhood is not same. It's not. Everybody is paranoid, thinking it's going to happen again. People [are] moving out of there. * * *

{¶11} Michael Summers, mayor of Lakewood, addressed the court on behalf of the residents of the community.

We go to bed at night and we think we're safe in our own homes. This crime challenged the notion of our sense of safety and vulnerability. * * * This crime basically makes us all realize that the sheer randomness of it

makes us all feel venerable. So it gets to the very core and it challenges the vulnerability and the sanctity that scares us all. So anything you could do to help our communities feel safe would be appreciated and appropriate.

Thank you.

**{¶12}** A fourth victim, Willie Hodge, an acquaintance of Jones, was shot in the stomach by Jones, but he did not address the court.

**{¶13}** In Cuyahoga C.P. No. CR-555501, the court sentenced Jones to a total of 11 years: eight years for aggravated burglary, one year for abduction, to run concurrently with each other, and three years on the firearm specifications, to run concurrently with each other but consecutive to the sentence for the underlying offenses. In Cuyahoga C.P. No. CR-556053, Jones was sentenced to eight years on aggravated robbery and three years on the firearm specification, for a total of 11 years. In Cuyahoga C.P. No. CR-555628, he received ten years of imprisonment: seven years on felonious assault and three years on the firearm specification. The trial court ordered these terms of imprisonment to be served consecutively, for a total of 32 years.

**{¶14}** Jones now appeals, bringing two assignments of error for our review. In the first assignment, he contends his sentence was contrary to law. In the second assignment of error, he claims his guilty plea was not knowing, intelligent, and voluntary because he was not clearly or accurately informed of the maximum penalty for his offenses. We review his sentence first.

## Standard of Review for Sentence

**{¶15}** The Ohio Supreme Court, in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, set forth a two-step analysis for an appellate court to apply when reviewing felony sentences. First, the reviewing court must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the appellate court then reviews whether the trial court abused its discretion in selecting sentences within the range permitted by the statute. *Id.* at ¶ 17. The first prong of the analysis instructs that "the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." *Id.* at ¶ 14.

**{¶16}** Jones contends the trial court's sentence is contrary to law because (1) it imposed consecutive sentences without making the requisite statutory findings, and (2) his 32-year prison term is disproportionate to the seriousness of his offenses. We consider the unlawful-consecutive-sentences claim first.

### Consecutive Sentences

**{¶17}** H.B. 86, which became effective on September 30, 2011, revived the requirement that trial courts make findings before imposing consecutive sentences under R.C. 2929.14(C). The statute, as revised by H.B. 86, requires a trial court to make specific findings when imposing consecutive sentences.[1] Under current R.C.

---

[1] In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court held that the findings required by the former R.C. 2929.14 were unconstitutional. The court, however, later concluded that *Foster* was incorrect pursuant to *Oregon v. Ice*, 555 U.S. 160, 129

2929.14(C)(4), when imposing consecutive sentences, the trial court must first find the sentence is "necessary to protect the public from future crime or to punish the offender." Next, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find that one of the following factors applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C).

**{¶18}** Therefore, as of September 30, 2011, the effective date of H.B. 86, a trial court must make specific findings before imposing consecutive sentences. *State v. Wilson*, 8th Dist. No. 97827, 2012-Ohio-4159, ¶ 10; *State v. Calliens*, 8th Dist. No. 97034, 2012-Ohio-703, ¶ 28; *State v. Davis*, 8th Dist. Nos. 97689, 97691, and 97692, 2012-Ohio-3951, ¶ 6-9; *State v. Matthews*, 8th Dist. No. 97916, 2012-Ohio-5174, ¶ 45;

---

S.Ct. 711, 172 L.Ed.2d 517 (2009). *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. Subsequently, H.B. 86 revived the requirement that trial courts make findings before imposing consecutive sentences, in R.C. 2929.14(C).

*State v. Bonner*, 8th Dist. No. 97747, 2012-Ohio-2931, ¶ 5; *State v. Doss*, 8th Dist. No. 98229, 2012-Ohio-5751, ¶ 16.

**{¶19}** Accordingly, under the first prong of the *Kalish* analysis, a reviewing court is required to examine whether the trial court makes the statutory findings pursuant to R.C. 2929.14(C) before imposing consecutive sentences.[2] *State v. Boyd*, 8th Dist. No. 98342, 2013-Ohio-30, ¶ 20.

**{¶20}** In *Matthews*, *supra*, this court explained the standard we apply in reviewing a consecutive sentence in light of the statutory requirement set forth in R.C. 2929.14(C)(4).

> A trial court is not required to use "talismanic words   to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998).   A trial court satisfies this statutory requirement *when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria*.   See *State v. Edmonson*, 86 Ohio St.3d 324, 326, 1999 Ohio 110, 715 N.E.2d 131 (1999).

(Emphasis added.)   *Id*. at ¶ 48.   *See also Doss*, *supra*, at ¶ 20.

**{¶21}** In this case, before sentencing Jones, the trial court stated that it reviewed the presentence investigation report and Jones's prior record.   However, the court's

---

[2]We note that R.C. 2929.14(C) refers to "convictions of multiple offenses" and does not distinguish between multiple counts in a single case and multiple counts in separate cases.  *See*, *e.g.*, *State v. Rouse*, 8th Dist. No. 82757, 2003-Ohio-5660 (this court affirmed the sentence because the trial court made the requisite statutory findings before imposing consecutive sentences for appellant's multiple offenses in two separate cases).

analysis did not meet what is required by the statute. Its analysis consisted of the following:

> * * * [T]hese are never easy decisions to make. Your prior record is not that horrible. Juvenile Court shows that you had some problems in the past, but nothing that serious. And then in the space of a few months you go on this kind of a spree. I have great sympathy for all the victims in this case, in part, because I know firsthand what it's like to have a gun put to you and to be the victim of a robbery. That was on a public street. I can imagine it's that much harder when it's in your own home.

{¶22} Jones's conduct as reflected in the victims' statements may well warrant consecutive sentences, but, when the trial court does not articulate the findings as statutorily required, we are unable to conduct a meaningful review. The presumption in Ohio is that sentencing is to run concurrent, *State v. Ryan*, 2012-Ohio-5070, ¶ 10; it is essential that the record reflects statutorily required analysis and findings to support the imposition of consecutive sentences.

{¶23} This court has not hesitated to remand for resentencing when the record was insufficient to meet the requirements of R.C. 2929.14(C)(4). *See, e.g., Boyd*, 8th Dist. No. 98342, 2013-Ohio-30 (the trial court's vague reference to a risk assessment score and "numerous probations and numerous violations" failed to satisfy the requirements of R.C. 2929.14(C)(4)); *Matthews*, 8th Dist. No. 97916, 2012-Ohio-5174 (the record did not demonstrate that the trial court engaged in the required analysis and

made the necessary findings for the imposition of consecutive sentences); *Wilson*, 8th Dist. No. 97827, 2012-Ohio-4159, ¶ 13 (we were not persuaded by the state's argument that "a review of the entire record supports the trial court's imposition of consecutive sentences"; findings required by R.C. 2929.14(C)(4) must be made on the record at sentencing prior to imposing consecutive sentences).

{¶24} Similarly here, because the record does not reflect the trial court adequately engaged in the required analysis and selected the appropriate statutory criteria, we must reverse Jones's sentence and remand to the trial court for resentencing.

{¶25} Jones also argues the 32 years of imprisonment imposed by the trial court in this case is disproportionate to sentences imposed on similarly situated offenders. He bases this argument on R.C. 2929.11(B), which provides that a felony sentence shall be reasonably calculated to achieve the overriding purposes of protecting the public and punishing the offender, and must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶26} Because we find Jones's claim regarding consecutive sentences under the first assignment meritorious and remand for resentence, Jones's proportionality claim is moot and we need not address it.

**Guilty Plea**

**{¶27}** Under the second assignment of error, Jones contends his plea was not knowing, intelligent, or voluntary because he was not accurately informed of the maximum penalty.

**{¶28}** A reviewing court reviews de novo whether the trial court accepted a plea in compliance with Crim.R. 11(C). *State v. Schmick*, 8th Dist. No. 95210, 2011-Ohio-2263, ¶ 6. "We are required to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *Id.*

**{¶29}** "Crim.R. 11(C) governs the process by which a trial court must inform a defendant of certain constitutional and nonconstitutional rights before accepting a felony plea of guilty or no contest." *Id.* at ¶ 5. "The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he can make a voluntary and intelligent decision regarding whether to plead guilty." (Citation omitted.) *Id.*

**{¶30}** Under Crim.R. 11(C), prior to accepting a guilty plea in a felony case, the trial court must conduct an oral dialogue with the defendant to ensure that the plea is voluntary, that the defendant understands the nature of the charges and the maximum penalty involved, and that the defendant understands the constitutional right he or she waives by pleading guilty, including the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself. *See*, *e.g.*, *State v. Hussing*, 8th Dist. No. 97972, 2012-Ohio-4938, ¶ 18.

**{¶31}** Strict compliance is required if the appellant raises a violation of a constitutional right delineated in Crim.R. 11(C)(2)(c). When the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), it is presumed the plea was entered involuntarily and unknowingly and therefore invalid. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31.

**{¶32}** When the appellant raises a violation of a nonconstitutional right found in Crim.R. 11(C)(2)(a) and (b), we look for substantial compliance. *State v. Joachim*, 8th Dist. No. 90616, 2008-Ohio-4876. For example, if the trial court imperfectly explained nonconstitutional matters such as the maximum possible penalty and the effect of the plea, a substantial-compliance standard applies. *Clark* at ¶ 31. "Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving,' the plea may be upheld." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

**{¶33}** When the trial court does not substantially comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court partially complied or completely failed to comply with the rule. If the trial court partially complied, the plea may be vacated only if the defendant demonstrates a prejudicial effect. *Clark* at ¶ 32. The test for prejudice is "whether the plea would have otherwise been made." *Nero* at 108.

## Advisement Regarding Maximum Penalty

**{¶34}** In this case, Jones claims the trial court misadvised him of the maximum penalty he faced. Specifically, he points us to the portion of the plea hearing transcript where the trial court advised him of the sentence range for his first degree felony offense (aggravated robbery) in Cuyahoga C.P. No. CR-556053.

**{¶35}** Under the pre-H.B. 86 version of R.C. 2929.14, a defendant guilty of a first degree felony was subject to three to ten years of imprisonment. H.B. 86 revised the statute. Under the current statute, such a defendant now faces three to *eleven* years of imprisonment.

**{¶36}** In Cuyahoga C.P. No. CR-556053, the robbery incident occurred on August 10, 2011, before the H.B. 86 came into effect. The increased penalties are not retroactive — they apply to crimes committed on and after September 30, 2011.[3] Therefore, Jones faced three to ten years of imprisonment for this offense.

**{¶37}** In Cuyahoga C.P. No. CR-555501, the burglary incidents occurred on October 12 and 13, 2011, after the effective date of the statute. Therefore, Jones was subject to three to 11 years of imprisonment for these first degree felony offenses in CR-555501.

---

[3]Section 4 of H.B. No. 86, Section 4 addresses the legislative intent concerning retroactive application, stating that the amendments "apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section * * *." *See also State v. Steinfurth*, 8th Dist. No. 97549, 2012-Ohio-3257, ¶ 13 (courts must apply the statute in effect at the time the offender committed the offense).

**{¶38}** The sentencing transcript indicates that the trial court, at one point thinking it was addressing Cuyahoga C.P. No. CR-556053, stated (correctly) that "since the crime was committed before September 30th, I think the old law would apply on that." When pointed out the case being addressed at that time was Cuyahoga C.P. No. CR-555501, the trial court corrected itself and applied the new law, stating (again correctly) that the sentence range for aggravated burglary in that case was three to 11 years. However, when the court's attention next turned to the aggravated robbery count in Cuyahoga C.P. No. CR-556053, it inadvertently stated that "the same sentencing range applies there as well."

**{¶39}** The statement gave Jones the erroneous impression that he faced three to 11 years for aggravated robbery in Cuyahoga C.P. No. CR-556053, when in fact he only faced three to ten years. Because this involved a nonconstitutional right, we review under a substantial compliance standard. Because the trial court was correct in his advisement regarding the maximum years of imprisonment for all the other offenses, the trial court partially complied with the rule. Where the trial court partially complied, the plea may be vacated only if the defendant demonstrates a prejudicial effect.

**{¶40}** Jones fails to demonstrate that he suffered prejudicial effect — he has not demonstrated that, had he been more clearly informed that his maximum sentence for the aggravated robbery count in Cuyahoga C.P. No. CR-555628 was ten years instead of 11 years, he would not have pleaded guilty to the multiple counts in the three cases and would choose to go to trial instead.

## Advisement Regarding Postrelease Control

**{¶41}** Jones also claims that he was not properly advised of the "maximum penalty" before he pleaded guilty because, although the trial court properly advised him that he would be subject to five years of mandatory postrelease control and that a failure to report would result in a prison term up to half of the original sentence, the court failed to advise him that a violation of postrelease control could result in a prosecution for escape.

**{¶42}** In *State v. Milczewski*, 8th Dist. No. 97138, 2012-Ohio-1743, ¶ 15-17, this court entertained an identical claim. Appellant contended that the trial court did not comply with Crim.R. 11(C)(2)(a) by failing to advise him that he could be charged with escape if he did not report for postrelease control. We rejected this claim, concluding that nothing in this rule requires the trial court to advise the defendant that he could be charged with escape if he fails to report for postrelease control.

**{¶43}** Similarly, here, the trial court advised Jones that:

> any prison sentence on this would include five years of mandatory post release control. That means that after finishing your prison sentence, you still would have to report regularly to a parole officer for five years and meet certain conditions. And if you failed to do that you could be shipped back to prison for up to half your original sentence.

The advisement substantially complies with Crim.R. 11(C)(2)(a). *Milczewski*.

**{¶44}** The second assignment of error is without merit.

**{¶45}** Judgment affirmed in part and reversed in part; case remanded for resentencing.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS (WITH SEPARATE CONCURRING OPINION ATTACHED)

SEAN C. GALLAGHER, P.J., CONCURRING:

{¶46} I concur fully with the judgment and analysis of the majority. I write to note that the trial judge in this case is an experienced, respected, and knowledgeable jurist. I have no doubt he considered all the factors and weighed all the circumstances when imposing the sentence. While the record here arguably supports the trial judge's decision, we cannot just look to the record and make assumptions or correlate facts in the record to support the ultimate sentence reached by the judge. As the majority notes, H.B. 86 requires findings, and those findings must be made by the trial court. While judges do not have to give reasons for their findings, they must nevertheless state their findings on the record.

**{¶47}** One way trial courts can ensure compliance with H.B. 86 is to utilize a worksheet and memorialize the findings from that worksheet on both the record and in the court's journal entry.

> Because a trial court speaks only through its journal, we have long approved the use of a sentencing-findings worksheet to document that the trial court has made the required findings. *E.g., State v. Phillips,* 1st Dist. No. C-960898, 1997 Ohio App. LEXIS 2615 (June 18, 1997); *see also State v. Meister,* 76 Ohio App.3d 15, 19, 600 N.E.2d 1103 (1st Dist.1991). Use of the sentencing-findings worksheet ensures that the trial court has adhered to the applicable statutory mandate. *See* R.C. 2929.14(C); *see also* [*State v.*] *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 15. And by documenting the findings in the court's journal, the use of a worksheet also ensures meaningful review of the trial court's sentencing decisions.

*State v. Alexander*, 1st Dist. Nos. C-110828 and C-110829, 2012-Ohio-3349.