[Cite as *State v. Ross*, 2013-Ohio-3130.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98763**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LARRY ROSS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-554463

**BEFORE:** Jones, P.J., S. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** July 18, 2013

**ATTORNEYS FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, Ohio 44113

Kevin M. Spellacy
McGinty, Hilow & Spellacy
614 W. Superior Avenue
Suite 1300
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Edward D. Brydle
        Kerry A. Sowul
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Larry Ross, appeals his conviction and sentence. We affirm the judgment of conviction, but reverse the sentencing judgment and remand the case for resentencing.

I.    Procedural History

{¶2} In September 2011, Ross, along with his codefendant, Duane Chisholm, was charged with several crimes.[1] Ross was charged as follows: Count 1, aggravated robbery; Count 2, kidnapping; Count 3, grand theft of a motor vehicle; Count 4, petty theft; Count 5, felonious assault on a peace officer; Counts 6 and 7, criminal damaging or endangering; Count 8, having weapons under disability; and Count 10, tampering with evidence.[2]

{¶3} The aggravated robbery, kidnapping, and felonious assault charges contained one- and three-year firearm specifications, notices of prior conviction, repeat violent offender specifications, and forfeiture specifications. Additionally, the felonious assault on a peace officer charge (Count 5) contained a seven-year firearm specification.

{¶4} In June 2012, the case was tried to a jury, with the exception of the having weapons under disability charge, the notices of prior conviction, and the repeat violent

---

[1]This was a reindicted case. The first case, Cuyahoga C.P. No. CR-549325, was filed in April 2011, and was dismissed in June 2012. The two cases contained the same charges, with the exception of a seven-year firearm specification on Count 5, contained in this case, but not the first one.

[2]Count 9 related solely to Chisholm.

offender and forfeiture specifications, which were tried to the court. The jury found Ross guilty of all counts and the firearm specifications, and the court found him guilty of the remaining charge and specifications. The trial court sentenced Ross to a 21-year prison term, which included consecutive sentences.

## II. Facts

{¶5} The crime in this case took place in Cleveland. Ross's codefendant, Chisholm, testified that on the day of the incident, Ross called him and the two discussed "hitting a lick," which means committing a robbery. After their conversation, Ross picked Chisholm up in a white Kia and they drove to Ross's uncle, Lavelle Ross's, house, where Ross got a revolver handgun and a 9 mm gun. Chisholm took the revolver, and Ross took the 9 mm gun. The two then drove around looking for a "dope boy" to rob. According to Chisholm, Ross was wearing a gray "hoodie."

{¶6} Chisholm testified that they did not want to commit the robbery while using Ross's vehicle, so they planned to steal a vehicle. They happened upon a minivan that was running and decided to steal it. The victim, 16-year-old Teshawn Johnson, was inside the van.

{¶7} Teshawn testified that he had gone to work that evening with his father, Tyrone Johnson, who was a contractor for the city of Cleveland. The father's minivan was parked outside of a house where the father was inside snaking out a drain; Teshawn stayed in the van to sleep.

{¶8} According to Teshawn, two men forced their way into his father's van, one

on each side. They forced Teshawn to the middle and told him "shut up and not say anything." Teshawn testified that the "smaller, older" man started driving the van, and he told the "bigger, younger" man to check Teshawn's pockets.[3] The "smaller, older" man was Chisholm, and the "bigger, younger" man was Ross. Teshawn described Ross as wearing a "blue basketball type jersey."

{¶9} Ross took Teshawn's cell phone. They ordered Teshawn to take off his pants and shoes, which Teshawn did. Teshawn testified that he saw a gun.

{¶10} After driving a couple of blocks, Teshawn was told to get out of the minivan through the side sliding door, which he did; he still did not have his pants or shoes on. As it happened, a police car was in the vicinity as Teshawn was getting out of the van. The officers in the car, Vasile Nan and Robert Kowza, saw Teshawn being pushed out of the van without pants, and curious as to what was occurring, positioned their vehicle headlight-to-headlight with the van.

{¶11} Teshawn told the police that he had just been robbed, and the officers immediately pursued the vehicle, whose driver was speeding in reverse down the one-way street. The driver of the van proceeded that way for two blocks, before making a turn onto another street. During the pursuit, the police shone their mounted spotlight into the van; they saw the man driving, later identified as Ross, and the passenger, later identified as Chisholm.

---

[3]The defendants looked through Teshwan's wallet, but it did not contain any money or anything of value.

{¶12} In a broadcast call, Officer Nan described Ross as wearing a blue hooded sweatshirt; in another call to dispatch, the officer described Ross as wearing a gray hooded sweatshirt. Officer Nan testified that he confused the colors and meant that Ross had a blue shirt on under a gray hooded sweatshirt.

{¶13} The pursuit of the van ended when it went over a curb and crashed into a house. Both Ross and Chisholm exited the van and ran. The police pursued them on foot; Officer Nan followed Ross and Officer Kowza followed Chisholm. While running, Ross fired a gun at Officer Nan, who returned fire. A discharged bullet, determined to have been fired from Ross's gun, hit a minivan (not Tyrone's) parked on the street and shattered its rear window.

{¶14} Other police officers arrived to assist. Ross continued to run and, at one point, took off his gray sweatshirt and threw it in a yard. When encountered by the police on another street, Ross reversed his direction and ran back toward the yard where he had thrown his sweatshirt. He hid under a back porch. The police saw Ross and ordered him out, but he refused. Ross was dragged out from under the porch by the police.

{¶15} After his arrest, Ross talked to the police. He told them that he had been walking down the street when an older black man approached him with a gun and told him to run. So Ross ran, and the next thing he knew, he was being ordered to the ground. He then realized that it was the police, and they (six officers) started beating him, telling him he should not have shot at an officer.

{¶16} Ross denied having had a gun or wearing a gray hooded sweatshirt. Ross told the police that his cousin had dropped him off in the neighborhood and he was on his way to see a woman. Ross did not have an address or phone number for the woman he claimed he was on his way to see, however.

{¶17} The police recovered a set of keys from Ross and, using the remote, determined that they were the keys from a nearby-parked white Kia, the same kind of car Chisholm said Ross was driving before they stole the van. When told that his car was found nearby, Ross told the police that he did not want the woman he was on his way to see to know he had a car, out of fear that she would frequently ask him to drive her children around.

{¶18} Teshawn's cell phone was recovered from Ross's pocket. The police canvassed the area where Ross had been running and recovered his sweatshirt. They also recovered a gun from the same yard where the sweatshirt was. The gun was submitted for DNA testing; the testing concluded that Ross's DNA was on the weapon. The spent bullet fired at Officer Nan was recovered, and it was determined that it was fired from the gun with Ross's fingerprints. The gun's registered owner was Lavelle Ross, Ross's uncle.

{¶19} Another gun was recovered from inside Tyrone's van. Tyrone testified that he did not have any weapons in the van.

{¶20} Ross and the gray sweatshirt were tested for gunshot residue; no residue was found. The forensic expert testified that a lack of residue does not mean that a person

did not fire a weapon. The expert testified that the residue may have never landed on the person's hands or clothing. The expert further testified that gunshot residue can easily come off by rubbing or washing hands.

{¶21} Ross testified at trial. He denied any involvement in the robbery. He reiterated that his cousin had dropped him off in the neighborhood that evening so that he could see a woman. Ross testified that he was married, and he, his wife and children lived in Bedford. He was having an affair, and his wife did not know. So that his wife would not see his car at his mistress's house, he always parked away from her home and walked there.

{¶22} Ross also maintained his prior version of events, that he was approached by a man with a gun. But, at trial he testified that the man told him not to run, but he ran anyway. Ross testified that he ran about three houses into a backyard when he heard the police say "freeze." Two officers apprehended him and then five or six more beat him, saying that he had just shot an officer.

{¶23} Ross testified that his DNA might have been on his uncle's gun because he frequently did work at his uncle's house and had to move the gun to do the work.

{¶24} Ross admitted to having a prior criminal record, which included a 2005 conviction for felonious assault with a gun.

{¶25} According to Ross, everyone who testified against him was lying.

{¶26} Ross now raises the following assignments of error for our review:

[I.] The defendant's convictions are against the manifest weight of the evidence.

[II.]   The trial court erred by not providing the jury with the cautionary instructions included in ORC §2923.03(D) regarding accomplice testimony.

[III.]   The defendant's convictions for aggravated robbery and for the three year firearm specification as contained in counts one and two were not supported by sufficient evidence necessary to support the conviction.

[IV.] The trial court erred in finding that the offenses of aggravated robbery and kidnapping are not allied offenses of similar import.

[V.] The trial court erred when it received a jury question and answered it outside of the presence of the defendant.

[VI.] The trial court erred in sentencing the defendant to consecutive sentences without making the required findings as set forth in H.B. 86.

[VII.] The defendant was deprived of his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

### III.   Law and Analysis

Manifest Weight of the Evidence

{¶27} For his first assigned error, Ross contends that his conviction was against the manifest weight of the evidence.

{¶28} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." *Id.* at 390 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury,

but must find that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387. *See also id.* at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

**{¶29}** Ross cites inconsistencies in the testimony as demonstrating that the conviction was against the manifest weight of the evidence such as: (1) Teshawn's testimony that Chisholm was driving Tryone's van, compared to the police testimony that Ross was driving; (2) Teshawn's testimony that Ross was wearing a blue basketball jersey, as compared to other testimony that he was wearing a gray hooded sweatshirt; and (3) Officer Nan's initial description that Ross was wearing a blue "hoodie," compared to his subsequent description that he was wearing a gray one.

**{¶30}** Although we consider the credibility of the witnesses in addressing a manifest weight of the evidence argument, we are guided by the presumption that the jury, or the trial court in a bench trial, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶31} Upon review, there is nothing so incredible about the inconsistencies in the testimony presented by the state that leads us to find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Weighing the evidence and all reasonable inferences, the inconsistencies were minor and, putting them aside, the evidence demonstrated that Ross and Chisholm pushed their way into Tryone's van, where his son Teshawn was sleeping. The defendants told Teshawn to "shut up and not say anything," and take his pants and shoes off, all while driving the van away from where it was parked. They took his cell phone, and ordered him out of the van without his pants or shoes.

{¶32} Coincidentally, police were patrolling the area where Teshawn was ordered out, and saw him. Upon learning that he had been robbed, they immediately pursued the van, and during the pursuit one of the officers shone the mounted police spotlight into the van and was able to see Ross and Chisholm. The vehicle pursuit ended when the van crashed into a house, but then began an on-foot chase, as Ross and Chisholm exited the van and ran.

{¶33} During the on-foot chase, Ross fired at Officer Nan. He eventually hid under a house porch, and did not comply with police orders to come out. The police had to forcibly remove him from under the deck.

{¶34} Tracing the path of the on-foot pursuit, the police found the same gray hooded sweatshirt they had previously seen Ross wearing, and a gun, in one of the yards he ran through. The gun found in the yard had Ross's DNA on it, and it was determined

that it was the same weapon that had fired shots at Officer Nan.

{¶35} This evidence supports the weight of the convictions. Ross's first assignment of error is, therefore, overruled.

Jury Instructions

{¶36} For his second assigned error, Ross contends that the trial court erred by not instructing the jury on accomplice testimony under R.C. 2923.03(D). Defense counsel did not request such an instruction; therefore, we review for plain error.

{¶37} For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial. *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 11; Crim.R. 52(B). Recently, the Ohio Supreme Court has stated that a reviewing court should be "conservative in its application of plain-error review, reserving notice of plain error for situations involving more than merely theoretical prejudice to substantial rights." *State v. Steele*, Slip Opinion No. 2013-Ohio-2470, ¶ 30. Thus, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶38} R.C. 2923.03(D) provides as follows:

(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with * * * an offense, the court, when it charges the jury, shall state substantially the following:

The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed

complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

{¶39} Upon review, the failure of the trial court to give the jury the cautionary instruction under R.C. 2923.03(D) was harmless for two reasons. First, even disregarding Chisholm's testimony, the other testimony against Ross, as set forth in the preceding assignment of error, was overwhelming. Thus, the outcome of the trial was not affected by the lack of instruction.

{¶40} Second, testimony was elicited from Chisholm that he negotiated a plea and was testifying truthfully in hopes for consideration thereof at sentencing. Thus, the jury was aware of Chisholm's potential self-interest and bias in testifying for the state.

{¶41} The cases cited by Ross are distinguishable from the situation here. In *State v. Lett*, 8th Dist. No. 84696, 2005-Ohio-1308, the defense requested the instruction and the trial court denied the request. Likewise, in *State v. Pope*, 8th Dist. No. 81321, 2003-Ohio-3647, which *Lett* cites, the trial court denied the defense's request for the instruction. Here, however, no request was made.

{¶42} And in *State v. Pagan*, 8th Dist. No. 97269, 2012-Ohio-2197, this court held that the instruction was not required because the alleged accomplice was actually not an accomplice because he had already been acquitted of the charges against him at the time he testified.

{¶43} In light of the above, there was no plain error by the lack of a cautionary

instruction regarding Chisholm's testimony.  The second assignment of error is overruled.


Sufficiency of Evidence Relative to Three-Year Firearm Specifications Contained in Aggravated Robbery and Kidnapping Counts

**{¶44}** Ross contends in his third assigned error that the three-year firearm specifications attendant to the aggravated robbery and kidnapping charges were not supported by sufficient evidence.

**{¶45}** Sufficiency is a question of law.  *Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.  If the state's evidence is found to have been insufficient as a matter of law, then on appeal, the court may reverse the trial court.  *Id.* at paragraph three of the syllabus, citing Section 3(B)(3), Article IV, Ohio Constitution. Under this construct, the state would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury.  *Id.*

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses.  Instead, the appellate court presumptively "view[s] the

evidence in a light most favorable to the prosecution." *Id.*

**{¶46}** According to Ross, there was an "utter lack of evidence that a firearm was used to commit the * * * aggravated robbery and kidnapping and that, at most, there was some evidence that he may have merely possessed a firearm." We disagree.

**{¶47}** R.C. 2941.145 governs three-year firearm specifications and is applicable when an

> offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

R.C. 2941.145(A).

**{¶48}** There was sufficient evidence to support the three-year firearm specifications attendant to the aggravated robbery and kidnapping charges. Teshawn specifically testified that he saw a gun while Ross and Chisholm were in the van, and that he did not have any weapons that evening. His father also testified that, prior to Ross and Chisholm stealing the van, there had been no weapons in it that evening. The police recovered a gun from Tyrone's van. This testimony was sufficient to support the "display" portion of R.C. 2941.145.

**{¶49}** Ross further contends that the evidence was insufficient because Teshawn did not testify who had the gun, Ross or Chisholm. "An accomplice to a crime, however, is subject to the same prosecution and punishment, including sentencing enhancements, as the principal offender." *State v. Fulton*, 8th Dist. No. 96156, 2011-Ohio-4259, ¶ 42, citing *State v. Chapman*, 21 Ohio St.3d 41, 487 N.E.2d 566

(1986), syllabus; *State v. Moore*, 16 Ohio St.3d 30, 33, 476 N.E.2d 355 (1985) (holding that unarmed accomplice to aggravated robbery is subject to a mandatory three-year term of actual incarceration on a firearm specification). Sufficient evidence was presented that a gun was on or about both defendants' person, or under their control, and displayed during the incident.

{¶50} In light of the above, the third assignment of error is overruled.

Aggravated Robbery and Kidnapping as Allied Offenses

{¶51} For his fourth assigned error, Ross contends that the trial court erred by not finding that the aggravated robbery and kidnapping were allied offenses.

{¶52} R.C. 2941.25, Ohio's allied-offenses statute, provides

> [w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

R.C. 2941.25(A). By contrast,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶53} The Supreme Court of Ohio has set forth the test for determining whether two crimes are allied offenses of similar import in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. In *Johnson*, the court emphasized the importance of considering the defendant's conduct:

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the offenses can be committed by the same conduct, then we must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."
* * * If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

(Emphasis in original.)   *Id.* at ¶ 48-51.

**{¶54}** We do not agree with Ross that it is "clear that the kidnapping and aggravated robbery were committed at precisely the same time, with the same conduct and with one animus."

**{¶55}** The Ohio Supreme Court has provided guidelines for determining whether the restraint or movement of a victim is "penologically significant" apart from an aggravated robbery.   *State v. Logan*, 60 Ohio St.2d 126, 135, 397 N.E.2d 1345 (1979).

**{¶56}** The court stated that where the "restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions."   *Id.* at paragraph a of syllabus.   And "where the asportation or restraint exposes the victims to a substantial increase in the risk of harm separate and

apart from the underlying crime of robbery, a separate animus [also] exists for kidnapping." *Id.* at paragraph b of syllabus.

**{¶57}** The kidnapping in this case was separate and apart from the robbery. Specifically, the defendants drove Teshawn in the van — approximately two blocks — after they had his cell phone. When contrasted to the moments it took to steal the cell phone, that restraint was prolonged. Further, the movement was substantial.

**{¶58}** On this record, the aggravated robbery and kidnapping were not allied offenses and the fourth assignment of error is overruled.

Answering Jury Question Outside Defendant's Presence

**{¶59}** For his fifth assignment of error, Ross contends that the trial court erred by answering two jury questions outside of his presence, and cites this court's decision in *State v. Adams*, 8th Dist. No. 93513, 2010-Ohio-4478, in support of his contention.

**{¶60}** In *Adams*, this court stated that "[i]t is well established that a defendant in a criminal case has a right to be present when, pursuant to a request from the jury during its deliberations, the judge communicates with the jury regarding his instructions." *Id.* at ¶ 41, citing *State v. Abrams*, 39 Ohio St.2d 53, 313 N.E.2d 823 (1974). Thus, a communication between the court and the jury outside the presence of a defendant is error and may be grounds for a new trial. *Id.*, citing *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988).

**{¶61}** Notwithstanding the above, "erroneous communications between the judge and jury constitute good cause for a new trial only if the communications prejudiced the

defendant's right to a fair trial."  *Adams* at ¶ 42, citing *Abrams*; *State v. Jenkins*, 15 Ohio St.3d 164, 233-237, 473 N.E.2d 264 (1984).

{¶62} The trial court met with the attorneys to discuss answers to the following two jury questions, as stated in relevant part: (1) "We have verdicts on all 8 of the counts given to us, but the last count is labeled 'Count Ten.'  Did we miss two, or is that a typo?" and (2) "On the 'Further Finding' on Count #7 * * * does shooting a bullet through a minivan constitute 'operating' a vehicle?"

{¶63} The court answered relative the first question:   "You were given all of the counts that you were to consider."[4]  As to the second question, the court replied: "Please disregard the further finding verdict form associated with Count 7."   The state subsequently dismissed the further finding.

{¶64} The questions and answers did not prejudice Ross.   In fact, as to the second one, it actually benefitted him.

{¶65} In light of the above, the fifth assignment of error is overruled.

Consecutive Sentence

{¶66} In his sixth assignment of error, Ross contends that the trial court erred in sentencing him to consecutive sentences without making the required findings under R.C. 2929.14(C)(4).

{¶67} R.C. 2953.08(G)(2) provides two bases for a reviewing court to overturn the

---

[4]As previously stated, Count 8, having weapons while under disability, was tried to the bench and Count 9 related solely to Chisholm.

imposition of consecutive sentences: the sentence is "otherwise contrary to law" or the reviewing court clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4).

{¶68} Under R.C. 2929.14(C)(4), consecutive sentences can be imposed if the court finds that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition to these two factors, the court must find any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶69} At sentencing, Tyrone (the victim's father) and Officer Nan addressed the court. The court spoke at length and included in its discussion Ross's prior record, the seriousness of the crimes, the impact of the crimes on the victims, and Ross's lack of remorse. The court found that the crimes in this case were committed while Ross was

out on bond in two other cases. The court further found that prison was necessary due to (1) the seriousness of Ross's conduct and its impact on the victims, (2) the need to deter Ross, and (3) to protect the public from future crimes.

**{¶70}** Ross concedes that the trial court's discussion was sufficient to satisfy the findings under R.C. 2929.14(C)(4) that the sentence was necessary to protect the public from future crime and that Ross committed the crimes while he was awaiting trial on other charges. However, Ross contends that the trial court failed to make the required finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. We agree.

**{¶71}** The trial court is not required to use "magic" words in imposing consecutive sentences. *State v. Gus*, 8th Dist. No. 85591, 2005-Ohio-6717, ¶ 30. But the trial court has to engage in the appropriate analysis. *State v. Murrin*, 8th Dist. No. 83714, 2004-Ohio-3962, ¶ 12.

**{¶72}** Upon review, we find that the trial court did not conduct the appropriate analysis required under R.C. 2929.14(C) in sentencing Ross to consecutive terms. As this court previously noted, "[t]rial courts can ensure compliance with the sentencing statutes by utilizing a worksheet and memorializing their findings from that worksheet on both the record and in the court's journal entry." *State v. Alexander*, 8th Dist. No. 98762, 2013-Ohio-1987, ¶ 13, fn.2.

> Because a trial court speaks only through its journal, we have long approved the use of a sentencing-findings worksheet to document that the trial court has made the required findings.

*Id.*, quoting *State v. Jones*, 8th Dist. No. 98371, 2013-Ohio-489, ¶ 47 (Gallagher, S., concurring), citing *State v. Alexander*, 1st Dist. Nos. C-110828 and C-110829, 2012-Ohio-3349.

**{¶73}** His sixth assignment of error is, therefore, sustained.

Cumulative Errors

**{¶74}** For his final assignment of error, Ross contends that the cumulative effect off all the errors, taken as a whole, deprived him of a fair trial.   We disagree.

**{¶75}** Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal.  *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623. However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent. *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48.

**{¶76}** Because we find Ross's other assignments of error relative to the proceedings during trial meritless, the cumulative error doctrine does not apply.

**{¶77}** The seventh assignment of error is overruled.

**{¶78}** Judgment affirmed in part and reversed in part.   The judgment of conviction is affirmed; the sentencing judgment is reversed, and the case is remanded for resentencing only as to the sentence imposed on Count 5, which was ordered to be served

consecutive to the sentences on the other counts.[5]

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., PRESIDING JUDGE

TIM McCORMACK, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS
IN JUDGMENT ONLY AS TO ASSIGNMENT
OF ERROR NO. 6, AND CONCURS FULLY
WITH REMAINING OPINION

---

[5] *See State v. Dodson*, 8th Dist. No. 98521, 2013-Ohio-1344, ¶ 11 (directing resentencing only as to the portion of the offender's sentence that was ordered by trial court to be served consecutively without the requisite statutory findings).